UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPHUS M. PETAWAY, | ) | CASE NO. 4:11CV2529 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | Magistrate Judge Limbert |
| | ) | |
| VINCENT BURTON, | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Defendant. | ) | |

Before the undersigned is a motion for summary judgment filed by Defendant Vincent Burton ("Defendant"), a case manager at Federal Correctional Institution Elkton ("FCI"). ECF Dkt. #32. Defendant moves for summary judgment on Plaintiff Josephus M. Petaway's ("Plaintiff") claims against him in his individual capacity, arguing that qualified immunity applies. *Id.* Judge Pearson referred this case to the undersigned on August 7, 2013. ECF Dkt. #43. For the following reasons, the undersigned recommends that the Court grant Defendant's motion for summary judgment and dismiss Plaintiff's complaint in its entirety with some of the claims dismissed WITHOUT PREJUDICE and others WITH PREJUDICE. ECF Dkt. #32.

I.  **FACTS AND PROCEDURAL HISTORY**

On November 22, 2011, *pro se* Plaintiff filed an action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) against Defendant in his individual capacity. Plaintiff alleges that Defendant retaliated against him because he exercised his right to access the courts and requested the due process of law. ECF Dkt. #1.

Plaintiff was convicted of Conspiracy to Possess Cocaine with the Intent to Distribute and Possession of Cocaine with the Intent to Distribute in violation of 21 U.S.C. § 841(a)(1) and § 846(a)(1) in the Northern District of Ohio and is a federal prisoner serving a 360-month term of imprisonment. ECF Dkt. # 32-1, at ¶6. Plaintiff began serving his federal sentence on March

8, 1995 in various federal correctional institutions and prior to his transfer to FCI Elkton, he was housed in FCI Gilmer, a medium security facility. *Id*. He was thereafter transferred to FCI Elkton, a lower security facility, on October 20, 2010, and was then transferred to the Federal Security Low ("FSL") Elkton, a low security facility, on July 7, 2011. *Id.* He apparently has since been transferred to FCI Terre Haute, a minimum security satellite camp in Indiana. *Id.; see also* ECF Dkt. Entry dated 4/10/13.

According to Plaintiff's complaint, he arrived to FCI Elkton on October 20, 2010, and Defendant was his case manager. ECF Dkt. #1, at ¶ 7. Plaintiff avers that on November 4, 2010, Defendant conducted an initial interview with him and inquired about the validity of Plaintiff's current release residence. *Id*. at ¶8. Plaintiff informed Defendant that his release residence was no longer valid because it had been torn down and replaced with a high school. *Id.* at 3. Plaintiff alleges that Defendant asked him for a new release residence and after Plaintiff informed him that he did not have one, Defendant told Plaintiff to give him any temporary address and a permanent one could be provided later. *Id*. at ¶9. Plaintiff gave Defendant the address for a distant cousin in Virginia and Defendant entered the address into Plaintiff's file. *Id.*

Plaintiff further alleges that during this initial review, he informed Defendant that his security point total had been incorrectly calculated as his case had been designated at the greatest severity. ECF Dkt. # 1, at ¶10. Plaintiff avers that Defendant disagreed that it was an error and refused to change his Male Custody Classification Form ("MCCF"), which shows a prisoner's security level. *Id*. In addition, Plaintiff avers that at the time of the initial review, his MCCF scored his Living Skill and Program Participation score as "good," which was the highest possible score. *Id.* at ¶11.

Roughly a week after the initial review, Plaintiff filed an Informal Request asking Defendant to change the severity of his offense from the greatest severity to moderate. ECF Dkt. # 1, at ¶14. Defendant refused the request. *Id*. Plaintiff then filed an Informal Resolution Form, which was also refused by Defendant. *Id*. Plaintiff then filed an Administrative Remedy form with FCI Elkton's warden. *Id*. at ¶15. On December, 15, 2010, Defendant informed Plaintiff that

2

the severity of his offense was being changed and he changed it from greatest to moderate. *Id*. at ¶16. Plaintiff alleges that this adjustment should have changed his security level from medium to minimum security level. *Id*. at ¶17. However, Plaintiff alleges that Defendant arbitrarily changed his Living Skills and Program Participation score from good to average, thus scoring Plaintiff as a low security prisoner rather than as a minimum-security prisoner. *Id*. Plaintiff avers that he asked Defendant about this arbitrary change and then, after some alleged negotiations between Plaintiff and Defendant, Defendant agreed to request a transfer for Plaintiff to a minimum-security facility if he dropped the Administrative Remedy and remained at FCI Elkton for 12 months. *Id*. at ¶24. Plaintiff alleges that he asked Defendant if he would put in a request for him to transfer to federal prison camp in Terra Haute, Indiana and/or Federal Prison Camp ("FPC") McDowell West Virginia and Defendant answered affirmatively. *Id.* at ¶25.

Plaintiff alleges that around March of 2011, he went to Defendant's office to attempt to change his temporary release residence to a permanent one, and Defendant refused to honor the request. ECF Dkt. # 1, at ¶28. Plaintiff also asked if he could transfer to a camp because he was really a minimum security level prisoner and Defendant told him to stay for twelve months and he would then send him to a camp. *Id*. at ¶29.

Plaintiff further alleges that on March 21, 2011, he submitted an Inmate Request to the associate warden regarding his efforts to change his release residence. *Id*. at ¶30. Plaintiff alleges that the associate warden referred his request to Defendant for disposition and Defendant told the associate warden that he had changed his release residence to Virginia prior to Plaintiff's arrival at FCI Elkton. *Id*. Plaintiff avers that his Inmate Request was denied based on Defendant's false statements. *Id*.

Plaintiff alleges that on April 4, 2011, he filed an Informal Resolution Form with Defendant requesting that his release residence be changed. ECF Dkt. # 1, at ¶32. Defendant denied this request, again "falsely" claiming that he had changed his release residence prior to Plaintiff's arrival at FCI Elkton. *Id*. at ¶33. Subsequently, Plaintiff filed an Administrative Remedy regarding Defendant's refusal to change his release residence. *Id*. at ¶34. Plaintiff also

3

filed a grievance with the BOP's Northeast Regional Office regarding Defendant's allegedly false statement as to when the release residence was changed. *Id*. at ¶35.

Plaintiff avers that on April 27, 2011, he had a custody review with Defendant and asked Defendant to correct his Living Skill and Program Participation scores and transfer him to a facility that matched his security level. ECF Dkt. #1 at ¶36. Plaintiff alleges that Defendant told him to give him six more months of clear conduct and he would transfer him to a camp of his choice. *Id.* Plaintiff allegedly told Defendant that what Defendant was doing was not lawful and Defendant ultimately told him that he would correct his security point total and request that Plaintiff be transferred to FCP Terra Haute or McDowell. *Id*. at ¶38. Defendant thereafter handed Plaintiff a copy of an updated MCCF and Plaintiff pointed out to Defendant that the form contained an error in that it indicated that Defendant was requesting a greater security management variable ("GSMV"), which is an action "required when placement has been made and/or maintained at an institution level inconsistent with the inmate's security score - a score which may not completely/accurately reflect his or her security needs." *See* Federal Bureau of Prisons Program Statement ("PS") 5100.08, Definitions, Ch. 2, Pg. 4. Defendant allegedly told Plaintiff that he would remove the GSMV from the form and submit a transfer request. ECF Dkt. #1 at ¶39.

Plaintiff avers that on March 2, 2011, the Northeast Regional Office responded to his grievance and instructed him to file it with FCI Elkton. ECF Dkt. #1 at ¶40.

Plaintiff further alleges that one week after his April 27, 2011 custody review with Defendant, he asked a staff member to check to see if a redesignation was pending to transfer him to another facility. ECF Dkt. #1 at ¶41. He was told that no transfer existed. *Id.*

Plaintiff further avers that on May 3, 2011, he filed an Informal Resolution Form with Defendant regarding Defendant's "knowingly false" statement as to when the release residence was changed. *Id*. at ¶42. He further alleges that on May 4, 2011, he filed another Informal Resolution Form regarding Defendant's refusal to conduct Plaintiff's custody review properly and his potential retaliation. ECF Dkt. # 1 at ¶43.

4

Plaintiff alleges that on May 5, 2011, Defendant retaliated against him by submitting a request that Plaintiff be transferred to FSL Elkton and issuing a 12-month GSMV which required a Walsh Act[1] Review. *Id*. at ¶44. Plaintiff maintains that there is no factual basis for subjecting him to any sort of sexual offender review. *Id*. at ¶45.

Plaintiff also alleges that on or around May 12, 2011, Defendant, in a retaliatory action, prepared a report that resulted in Plaintiff losing access to his e-mail account. ECF Dkt. # 1, at ¶47. Plaintiff maintains that his inability to access e-mails led other inmates to believe that he was a sex offender because he was informed by another inmate that sex offenders do not have access to e-mail services. *Id*. at ¶50. He avers that other inmates called him a sex offender and a child molester as a result. *Id*. In addition, Plaintiff also alleges that Defendant retaliated against him by requesting that Plaintiff be transferred to FSL Elkton so that he would be unable to work and earn sufficient funds to complete his bachelor's degree. *Id*. at ¶48.

Plaintiff also alleges that two weeks after his April 27, 2011 custody review, he learned that he was awaiting designation to FSL Elkton and when he asked other inmates if he could stop a transfer, they told him that it was unlikely because he was probably being transferred to FSL Elkton because there was an upcoming sex offender program. ECF Dkt. #1 at ¶52. Plaintiff asserts that the other inmates told him that is also why he could no longer access his e-mail. *Id*.

---

[1] According to Defendant, the Adam Walsh Child Protection and Safety Act of 2006 ("Walsh Act") is a federal statute also known as the Sex Offender Registration and Notification Act which protects the public from sex offenders and offenders against children and inter alia, requires the Bureau of Prisons to screen inmates in order to determine whether they need to be referred to the Bureau Certification Review Panel in Washington, D.C. for review of whether they need potential certification as a sexually dangerous person. ECF Dkt. #32-1at 21, citing PL 109-248, July 27, 2006, 120 Stat. 587 (codified at 42 U.S.C. § 16901, et seq. and various other parts of Title 18 of the United States Code). Defendant asserts that the Walsh Act requires screening of inmates who were arrested for but not charged or convicted of, a sexual offense and it is triggered whenever a request is made to transfer an inmate to a lesser security facility. *Id*. Defendant further contends that when an inmate is subject to the Walsh Act review, a GSMV is applied to the inmate's security classification because the inmate cannot be transferred to a lesser security institution while the review is pending. ECF Dkt. #32-1 at 22, citing PS 5100.08.

Plaintiff further alleges in his complaint that in late May of 2011, Defendant called him into his office and informed him that he was dealing with Plaintiff's over 30 Administrative Remedies by transferring Plaintiff. ECF Dkt. # 1, at ¶53. Plaintiff asked Defendant whether they could resolve the Administrative Remedies and Defendant allegedly responded "[n]o, sir. You are out of here." *Id.* at ¶54. He reminded Plaintiff that he was told not to push him. *Id.*

In early June of 2011, Plaintiff alleges that his unit counselor told him that his inability to access his e-mails was the result of Defendant putting "something in his file that was preventing him from accessing his messages." ECF Dkt. # 1, at ¶55.

Plaintiff alleges that on June 22, 2011, Defendant Burton was sent an e-mail informing him that Plaintiff's Walsh Act review showed no evidence indicating that he was a sexually dangerous person and he could therefore be transferred. ECF Dkt. #1, at ¶58. Plaintiff avers that Defendant did not ask that the GSMV be removed after learning this information, never informed Plaintiff of the decision, and never reinstated his access to his e-mails. *Id.*

On July 7, 2011, Plaintiff was transferred to FSL Elkton. ECF DKt. # 1, at ¶59. He avers that his e-mail privileges were reinstated there on July 15, 2011 after a case manager reviewed his file and told him that he should have never been denied access to his e-mails. *Id.* at ¶64.

Plaintiff also alleges that on November 2, 2011, Defendant arrived at FSL Elkton with other staff members to conduct a shakedown and as Plaintiff approached near Defendant to leave the unit, Defendant taunted him by stating, "Hey, my man Petaway." *Id.* at ¶67.

Plaintiff filed the instant complaint on November 22, 2011. ECF Dkt. # 1. Defendant filed his answer on September 21, 2012. ECF Dkt. # 18. On June 6, 2013, Defendant filed the instant motion for summary judgment asserting that Plaintiff failed to exhaust some of his claims, failed to establish a prima facie case for retaliation, and Defendant was entitled to qualified immunity. ECF Dkt. # 32. On July 8, 2012, Plaintiff filed a motion in opposition to Defendant's motion for summary judgment briefly stating that summary judgment is inappropriate. ECF Dkt. # 37. On August 5, 2013, Defendant filed a reply brief. ECF Dkt. # 41. On August 7, 2013, Judge Pearson referred the instant case to the undersigned for general pretrial supervision, including the filing of Reports and Recommendations on case-dispositive

6

motions. ECF Dkt. #43.

## II. STANDARDS OF REVIEW

### A. SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides in pertinent part that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Civ. P. 56, Advisory Committee Notes ("The standard for granting summary judgment remains unchanged" despite 2010 amendments to Rule 56). Rule 56(c)(1) outlines the procedures for supporting or opposing a motion for summary judgment, stating that:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Rule 56(c)(3) provides that the Court need only consider cited materials in determining a motion for summary judgment, but the Court may consider other materials presented in the record but not called to the Court's attention by the parties. Fed. R. Civ. P. 56(c)(3), advisory committee notes to 2010 Amendments.

The party moving for summary judgment has the burden of showing there exists no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the moving party meets his burden, the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed.R.Civ.P. 56(e). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual

7

dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough; the evidence must be such that a reasonable jury could find for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B.     PLRA EXHAUSTION REQUIREMENTS

The Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under section 1983, or any other federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as available are exhausted.

42 U.S.C.A. § 1997e(a). In order to address the large number of prisoner complaints filed in federal courts, the PLRA mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 911 (2007). Exhaustion is now mandatory in all actions brought with respect to prison conditions, rather than only § 1983 suits. *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 984 (2002). The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances, particular circumstances, excessive force, or some other wrong. *Id.* at 532.

Exhaustion is meant to give the agency a fair and full opportunity to adjudicate claims against it by parties who do not want to go through administrative channels. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2385 (2006). Administrative law accomplishes this goal by requiring proper exhaustion of administrative remedies, i.e., "using all steps that the agency holds out, and doing so *properly*." *Id.* (citing *Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002)). Unless the record demonstrates that the exhaustion requirements of the PLRA have been met, the appeal should be dismissed without prejudice for failing to satisfy the exhaustion of available state remedies requirement. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998) (reversed on other grounds).

### C.     *BIVENS* ACTIONS AND QUALIFIED IMMUNITY

*Biven v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), established that a private cause of action exists against federal

8

officials acting in their individual capacities for certain constitutional violations. In *Bivens* suits, government officials cannot be held vicariously liable for the unconstitutional conduct of others. *Ashcroft v. Iqbal*, 566 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The doctrine of qualified immunity shields government officials for liability for civil damages unless a plaintiff shows (1) that the federal or state official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, ---U.S. --- , 131 S.Ct. 2074, 2078, 179 L.Ed.2d 1149 (2011), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In order to be deemed clearly established, the right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Id*., quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Sixth Circuit has held that "[q]ualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009); *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002).

Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Chappell*, 585 F.3d at 907; *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *See also Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Qualified immunity applies whether the government official's error was a mistake of law or a mistake of fact. *Pearson*, 555 U.S. at 230. The plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *Untalan v. City or Lorain*, 430 F.3d 312, 314 (6th Cir. 2005).

### III.   LAW AND ANALYSIS

#### A.   EXHAUSTION

Defendant first moves for summary judgment on Plaintiff's claims that Defendant unlawfully retaliated against him by allegedly reducing his "good" score on the Living Skills and Program Participation to "average," which Plaintiff alleged scored him as a low security prisoner as opposed to a minimum security prisoner. ECF Dkt. #32-1 at 12. Defendant also asserts that

Plaintiff did not administratively exhaust his claim that Defendant taunted him at the "shakedown" at FSL Elkton. *Id*. In support of his failure to exhaust assertion, Defendant refers to an attached declaration by Marisa Davidson, an attorney for the Bureau of Prisons ("BOP") who, among other duties, provides legal services to FCI Elkton and has access to records maintained in the ordinary course of business by the BOP. ECF Dkt. #32-2 at 1. Attorney Davidson indicates that her access to records includes access to the BOP's Administrative Remedy Program for inmates which is available on a database called SENTRY. *Id*. at 2. She states that she reviewed Plaintiff's files on SENTRY and out of the 60 remedy requests that Plaintiff filed, Plaintiff exhausted only 7 of his administrative remedies. *Id.* Attorney Davidson states that four of those exhausted appeals pertain to Plaintiff's allegations in the instant complaint and she identifies those claims as the following and attaches them to her declaration:

> 1. Desire to Change Release Residence to Colorado/Transfer to Florence. A true and accurate copy of Administrative Remedy No. 636685 is attached at Tab A.
>
> 2. Claim that Case Manager Was Impartial[sic]/Wanted New Case Manager Assigned. A true and accurate copy of Administrative Remedy No. 640887 is attached at Tab B.
>
> 3. Wants Greater Security Management Variable Removed. A true and accurate copy of Administrative Remedy No. 640951 is attached at Tab C.
>
> 4. Remove Walsh Certifications and Explain Why Denied. A true and accurate copy of Administrative Remedy No. 677188 is attached at Tab D.

*Id.* at 2-3.

Based upon Defendant's arguments in his brief and Attorney Davidson's declaration, the undersigned recommends that the Court find that Defendant has met his initial burden on summary judgment of showing that Plaintiff has not exhausted some of his remedies. The burden therefore shifts to Plaintiff to show that the exhaustion requirements have been met as to his claims that Defendant retaliated against him by reducing his score of the Living Skills and Program Participation and by taunting him at the "shakedown" at FSL Elkton. Plaintiff has not responded to Defendant's assertion of failure to exhaust these two claims. In light of his failure to respond, as well as the undersigned's review of the law and Defendant's argument and attachments, the undersigned recommends that the Court find that 42 U.S.C.A. § 1997e(a) has

not been satisfied and Plaintiff's claims of Defendant's retaliation by reducing his "good" score on the Living Skills and Program Participation to "average" and Defendant's taunting him at the "shakedown" at FSL Elkton should be dismissed without prejudice.

Plaintiff and Defendant agree that Plaintiff has exhausted his administrative remedies as to his claims regarding the alleged refusal of Defendant to change Plaintiff's release address, Defendant's alleged refusal to correct the severity of his offense which impacted his security level, Defendant subjecting Plaintiff to the Walsh Act Review, and Plaintiff's transfer from FCI Elkton to FSL Elkton. The undersigned addresses those claims in turn.

### B.     RETALIATION

Plaintiff alleges that Defendant retaliated against him in numerous ways because he engaged in conduct that is protected by the First Amendment. ECF Dkt. # 1. The Sixth Circuit outlines three elements that a plaintiff must show in order to prove a First Amendment retaliation claim:

   (1) the plaintiff engaged in protected conduct;

   (2) an adverse action was taken against the plaintiff that would deter a person of normal ordinary firmness from continuing to engage in that conduct; and

   (3) there is a causal connection between elements one and two- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *See e.g., Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998); *Lewis v. ACB Bus Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998); *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997); *Yellow Freight Sys,m Inc. v. Reich*, 27 F.3d 1133, 1138 (6th Cir. 1994). An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf if the grievances are not frivolous. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

### 1.     RETALIATION FOR RELEASE RESIDENCE ADDRESS CHANGE REQUEST

Defendant moves for summary judgment on the basis of qualified immunity as to Plaintiff's claim that Defendant retaliated against him for exercising his First Amendment rights by refusing to change his release residence. ECF Dkt. #32-1 at 9-13. Defendant asserts that

11

Plaintiff cannot establish a retaliation claim because he cannot show that he suffered an adverse action or that the decision regarding his release residence was causally related to his protected conduct. *Id.*

As outlined above, Plaintiff alleges that during his first review with Defendant on November 4, 2010, Defendant asked him about his current release residence. ECF Dkt. #1 at 3. According to Defendant, an inmate's "release residence" is defined as

> [t]he verifiable destination to which an inmate realistically plans to reside upon release from Bureau custody. The inmate must provide proof of residence to his or her unit staff. Staff will rely upon the following references to assist in verification: Presentence Investigation Report/USPO verification; telephone and visiting lists; and, incoming and outgoing mail.

ECF Dkt. #43-1 at 18 n.2, quoting PS 5100.08, Definitions, Ch.2, Pg. 6. Plaintiff avers that after he told Defendant that his release residence was no longer valid, Defendant asked him for a new release residence and Plaintiff told him that he did not have one at the time. ECF Dkt. #1, at ¶8. Plaintiff alleges that Defendant told him to give him a temporary release residence and he could provide a permanent one later. *Id.* at ¶9. Plaintiff further avers that around March 2011, he returned to Defendant's office with a new release residence in Colorado with his fiancee and Defendant refused to change the temporary release residence that he had previously provided. *Id.* at ¶28. Plaintiff claims that he followed the proper grievance procedures and appeals regarding Defendant's refusal to change his release residence and Defendant's response to the grievance was to deny the release residence change request and to "knowingly and falsely" state on the grievance forms that Plaintiff had changed his release residence to Virginia prior to Plaintiff's arrival at FCI Elkton. *Id.* at ¶¶30, 32, 33, 34, 42.

In his own declaration attached to the motion for summary judgment, Defendant indicated that at his review with Plaintiff, Plaintiff requested that he change Plaintiff's release residence from Ohio to Colorado and Defendant declined to do so because Plaintiff was unable to provide a verifiable address for a new release location. ECF Dkt. #32-3 at 5. Defendant further explained that he did not change the release address because Plaintiff was not scheduled for release from incarceration until August 17, 2019 and changing a release residence to an address in a different District is a lengthy process and is usually not done until closer to an

12

inmate's release date. *Id*. Defendant further stated that an inmate's release residence does not affect his ability to participate in any program at his institution, does not affect his designation, and does not impact his activities at the institution. *Id*.

The undersigned recommends that the Court find that Plaintiff has failed to show that he can satisfy the adverse action element of a retaliation claim concerning Defendant's failure to change his release residence. Plaintiff advances no negative consequences arising from the failure to change the residence release address at the time that would deter a reasonable person of ordinary firmness from exercising his filing of administrative remedies. Moreover, Plaintiff fails to present any evidence raising a genuine issue of material fact to contradict Defendant's statement that an inmate's release residence does not affect his program participation, available activities, or security designation. ECF Dkt. # 32-3, Burton Decl., at ¶12.

For these reasons, the undersigned recommends that the Court GRANT Defendant's motion for summary judgment and DISMISS Plaintiff's claim of retaliation by Defendant by failing to change his release residence since Plaintiff fails to establish a prima facie case of retaliation.

      **2.**      **RETALIATION REGARDING TRANSFER TO FCL ELKTON AND REVIEW UNDER THE WALSH ACT AND LOSS OF E-MAIL PRIVILEGES**

Plaintiff further alleges that Defendant retaliated against him for filing grievances by transferring him to FSL Elkton which subjected him to a Panel Review under the Walsh Act with no factual basis upon which to subject him to such a review. ECF Dkt. #1 at ¶ ¶43- 52, 55-59, 61-66. Plaintiff contends that this resulted in a greater GSMV assessed against him, the loss of his e-mail privileges at the prison, the loss of a job, and the taunting of him by other inmates who referred to him as a child molester. *Id.*

Defendant moves for summary judgment on this retaliation claim as well, first asserting that he had no personal involvement over these matters and second asserting that Plaintiff suffered no adverse action from these matters because they did not otherwise affect his conditions of confinement at Elkton or his ability to transfer to a camp once he became eligible. ECF Dkt. #32-1 at 15.

13

Defendant states in his attached declaration that he submitted the required paperwork packet for Plaintiff to be transferred because Plaintiff had requested a transfer to a minimum security camp and Plaintiff's security point total was reduced after Plaintiff had filed an administrative remedy which resulted in the Warden changing his security level from greatest severity to moderate, which lowered his overall security points.  ECF Dkt. #32-3 at 6.  Defendant explained that this made Plaintiff eligible for another lesser security transfer to another institution, including a transfer from a low security like FCI Elkton to a minimum security institution, such as Terra Haute, where Plaintiff had requested to be transferred.  *Id.*

In a declaration attached to Defendant's reply brief from Sharon Harvey, Assistant Case Management Coordinator ("CMC") at FCI Elkton indicates that she, as a CMC, serves as the Sex Offender Release Coordinator, and that she is familiar with the BOP policies following the enactment of the Adam Walsh Act that required her as a CMC to review potentially dangerous inmates prior to their release or prior to their transfer to a minimum security facility.  ECF Dkt. #41-1 at 3.  She states that Defendant initiated a transfer of Plaintiff to a minimum security institution and she reviewed the transfer packet that Defendant was required to prepare for Plaintiff's transfer, which included Plaintiff's Presentence Investigation Report.  *Id*.  She indicates that upon review of the Presentence Investigation Report, it identified a prior conviction of Plaintiff that was based on an original charge that included conduct that required referral for review under the Walsh Act.  *Id*.  She recalled that the original charge was for sexual imposition involving a minor and she explained that the Walsh Act required her to look at the conduct charged and not just the conviction.  *Id.*  She further explains that the BOP not only conducts Walsh Act screenings within 18 months of an inmate's release, but also before an inmate is transferred to and placed at a minimum security facility because inmates are often transported without an escort and may work outside the perimeter or the camp and within the surrounding communities.  *Id.* at 3-4.

Ms. Harvey further indicated in her declaration that because Plaintiff was required to have a Walsh Act review, he could not transfer to a minimum security camp while the review was pending.  ECF Dkt. #41-1 at 4.  She explained that she therefore instructed Defendant to add

14

a GSMV and instead submit Plaintiff for a transfer to FSL Elkton so that he could still receive a lesser security transfer and because FSL Elkton housed some inmates who are designated as minimum and/or Out custody security inmates, which is the lowest custody level possible and is considered a lesser security transfer from FCI Elkton. *Id.* She also explained that because Plaintiff was subject to the Walsh Act review, Defendant was required to code Plaintiff within the SENTRY database as pending Walsh review, which automatically removes Plaintiff from the e-mail program until the Walsh review clears the inmate. *Id.* Ms. Harvey also indicated that part of her duties allow her access to information regarding inmate work assignments and she attached a copy of Plaintiff's work detail history which showed that Plaintiff held jobs at both FCI Elkton and FSL Elkton. *Id.* at 5.

The Sixth Circuit Court of Appeals has held that "[s]ince prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). However, a transfer of an inmate to another prison can be considered an adverse action where it "would result in foreseeable, negative consequences" that would deter a person of ordinary firmness from continuing to engage in protected conduct. *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010). Examples of foreseeable, negative consequences that the Sixth Circuit has held to be sufficiently deterrent for retaliation purposes include: transferring or threatening to transfer an inmate from the general population to a lock-down unit or to another prison with fewer privileges or higher security, *see id.; King v. Zamiara,* 150 Fed. App'x 485, 494 (6th Cir. 2005); transferring or threatening to transfer an inmate that results in the loss of a high-paying job that paid for the inmate's attorney fees, which makes access to the courts more difficult, *see Siggers-El*, 412 F.3d at 701-702; or transferring or threatening to transfer an inmate to segregation, *see Thaddeus-X*, 175 F.3d at 396.

In the instant case, Plaintiff does not allege any of the foreseeable negative consequences of the type cited above that resulted from his transfer from FCI Elkton to FSL Elkton. The undersigned therefore recommends that the Court find that Plaintiff fails to establish that a

15

person of ordinary firmness would be deterred from exercising his First Amendment rights by the transfer to a facility that, according to Defendant and Ms. Harvey, is actually a lesser security transfer.  *See Spearman v. Stoddard*, No. 1:09-cv-632, 2011 WL 4005381, at *8 (W.D. Mich. Mar. 30, 2011), unpublished ("Here, plaintiff's claim is even more attenuated, because he was transferred to a *lower* security classification.  Assigning a prisoner to a custody level, where he enjoyed greater freedom, is not an action that would deter a person of ordinary firmness." ).

Moreover, even if Plaintiff engaged in protected conduct under the First Amendment that resulted in actual adverse actions, he cannot overcome Defendant's showing that the same action would have been taken even without the protected activity.  If an alleged adverse action was taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone.  *See Thaddeus–X*, 175 F.3d at 399 ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."); *see also Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir.1984) (the conclusion that the state action would have been taken in the absence of improper motives "will frequently be readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage")(citation and quotation marks omitted).   Defendant asserts that he initiated a transfer to a minimum security institution at  Plaintiff's request and prepared the proper paperwork packet for review.  ECF Dkt. #32-3 at 6.  Ms. Harvey indicated that as part of her duties as a CMC, she reviewed the transfer packet and discovered that Plaintiff's past conduct, which lead to a conviction on lesser charges, required that his case be reviewed under the Walsh Act under BOP policy.  ECF Dkt. #41-1 at 3.  Ms. Harvey indicated that pending review under the Walsh Act, a prisoner's e-mail privileges are removed until he is cleared.  *Id*.  She stated that she instructed Defendant to apply a GSMV to Plaintiff's case so that he could still have a lesser security transfer with more privileges than FCI Elkton.  *Id*.

For these reasons, the undersigned recommends that the Court find that Plaintiff fails to present "significant probative evidence" that the Walsh Act review, temporary removal of e-mail

privileges and a lesser security transfer would not have occurred had he failed to file grievances. "Once the defendants put forth evidence, [Plaintiff is] required to present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248). *See Stanfield v. Thompson*, No. 4:12CV-P54-M, 2013 WL 899423, at *6 (W.D. Ky. Mar. 8, 2013)("[i]t is clear, and Plaintiff has produced no significant probative evidence to the contrary, that Defendants would have transferred Plaintiff for the 48 hours for non-retaliatory and proper reasons. Thus, Defendants are entitled to summary judgment in their favor on this [retaliation] claim.").

## IV. CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned RECOMMENDS that the Court GRANT summary judgment in favor of Defendant and DISMISS Plaintiff's claims as to his Living Skills and Program Participation score and his taunting claim WITHOUT PREJUDICE for his failure to exhaust those claims, and dismiss the remaining claims WITH PREJUDICE. ECF Dkt. #32.


Dated: September 12, 2013          */s/George J. Limbert*
                                                   **GEORGE J. LIMBERT**
                                                   **UNITED STATES MAGISTRATE JUDGE**


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walter,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985); and Local Rule 72.3